## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JESSICA BIGGS,

        Plaintiff,

    v.

CHICAGO BOARD OF EDUCATION,

        Defendant.

No.    18-6183

## COMPLAINT

Plaintiff Jessica Biggs complains of Defendant Chicago Board of Education as follows:

### Jurisdiction

1.    Jurisdiction is proper under 28 U.S.C. § 1331 (federal-question jurisdiction) and 42 U.S.C. §§ 1983, 1988.

2.    Venue in this district is proper under 28 U.S.C. §1391(b). All events occurred within the Northern District of Illinois and all parties reside or have offices within the Northern District of Illinois

### Parties

3.    Plaintiff Jessica Biggs is a citizen of the State of Illinois and resides in the Northern District of Illinois, in the City of Chicago.

4.    Defendant Chicago Board of Education (CBE) is a municipal corporation that is organized and regulated under the laws of the State of Illinois

and maintains its primary offices within the Northern District of Illinois at 1 North Dearborn, Suite 950, Chicago, Illinois.

5.     The Chief Executive Officer of Chicago Public Schools is Janice K. Jackson.

6.     Jackson is a final policy- or decision-maker for CBE with respect to termination of employees of CBE working as interim principals.

## Facts

7.     Biggs was employed by CBE from approximately June 2011 until June 29, 2018.

8.     From July 1, 2011 until July 20, 2012, Biggs was employed as resident principal of Canter Middle School.

9.     On July 21, 2012, Biggs was appointed to the position of interim principal of Edmond Burke Elementary School, located at 5356 S King Dr., Chicago, Illinois.

10.     Under applicable CBE policy, a licensed administrator may be assigned to serve as an interim or acting principal only if, "in the Chief Executive Officer's judgment, the licensed administrator has a proven record of performance based on the high standards established by the Chief Executive Officer that demonstrates that he or she is *exceptionally* qualified to serve the particular needs of the school to which he or she will be assigned.

11.     After her initial appointment as interim principal for Burke in 2012, Biggs continued to serve as interim principal for Burke for nearly six years.

12.     During her nearly six years as interim principal of Burke, Biggs was rated as "proficient" or higher in all evaluations.

13.     During Biggs' tenure as interim principal, the percentage of students performing at or above grade level in both reading and math according to the NWEA MAP assessment doubled, and kindergarten through 2nd Grade reading proficiency improved by over 12%.

14.     Additionally, 5Essentials for Burke showed an improvement from a low of "Not Yet Organized" to "Well Organized", the "Out-of-School Suspension" rate fell from 29.5 per 100 students in the 2013-14 SY to 1.9 per 100 in the 2017-18 SY, and the number of violent infractions or infractions named in Groups 4-6 of the Student Code of Conduct saw movement from 112 infractions in the 2014-15 SY as Burke absorbed over 100 more students from nearby closed schools to just 17 infractions in the 2017-18 SY.

15.     Biggs also entered into federal and community partnerships to improve school conditions, such as:

   a. writing and obtaining a $3.75 million Federal School Improvement Grant that was successfully implemented between the 2014-15 and 2017-18 SY;

   b. partnering with the Greater Chicago Food Depository to provide a bi-weekly Healthy Kids Market free to all Burke families;

   c. numerous partnerships with the University of Chicago to provide dozens of classroom assistants through the Neighborhood Schools

program and the early introduction of philosophy and Socratic seminar through the Winning Words program;

d. a multi-year partnership with the Bronzeville Alliance to turn a vacant lot into a food-producing community garden that now provides paid summer jobs for Burke students;

e. a partnership with the South East Chicago Commission to host the Inaugural Washington Park Summit at Burke in April of 2017 for community to provide input about their vision for Washington Park.

16.     In 2013, Biggs was awarded the Mayor of Chicago's Principal Achievement Award for reading and math growth above the 90th percentile.

17.     Biggs was recognized for her leadership of Burke in 2015 when she was awarded the Community Educator Award from the Bronzeville Alliance, and again in 2017 when the South East Chicago Commission recognized her as the Community Leader in Washington Park and presented her with an award for outstanding service to the community.

18.     Despite these achievements, however, on an unknown date in early 2017, the CBE Office of the Inspector General (OIG) initiated an investigation after receiving an anonymous complaint that Biggs had allegedly "instructed the school's attendance clerk to mark students present who were, in fact, not in school. "The complaint also claimed the Burke Elementary administrators asked school employees to transport students to and from school in their personal vehicles."

19.     Over approximately the next year, the OIG conducted oral interviews of select Burke personnel, including Biggs, and several former personnel.

20.     The OIG did not review any of the relevant physical records, including tardy books and logs, and did not evaluate prior audits of Burke's attendance books in which no significant discrepancies were noted.

21.     The OIG also failed to conduct any audit of its own of the physical records and compare that evidence to the allegedly false entries in CPS' SIM system.

22.     The OIG failed to compare the use of the "tardy" attendance code by Burke, an "early start" school, with other early start schools, rather than all school within Burke's Network.

23.     The OIG also failed to consider evidence that it is CBE's policy that the use of the tardy code is determined by each school. That is, each school—not CBE—determines the time at which a student will no longer be marked "present" and will then be marked "tardy" up until the time that a student should be marked "absent for half a day."

24.     Further, the OIG failed to interview current Burke teachers and staff who participated in attendance reporting procedures relevant to the OIG's investigation.

25.     The OIG also failed to substantiate claims made by former teachers or staff whom it did interview, all of whom are no longer employed at Burke.

26.     Despite these investigative failures, the OIG presented a report on May 14, 2018, to CBE that determined, in relevant part, that Biggs "instructed school attendance clerks to mark students who arrived late to school as tardy, regardless of when they arrived at school."

27.     This finding was inaccurate and contrary to the evidence, which in fact showed that Biggs never instructed attendance clerks to mark students tardy in contravention of CBE policy, and never instructed clerks to mark any student's attendance in a particular way.

28.     Regardless, the OIG recommended that CBE impose unspecified "appropriate discipline" for Biggs.

29.     Biggs, however, was not presented with a copy of the OIG's report and was unaware of the OIG's findings, and so she never had the opportunity to challenge, object to, or correct material contained in the OIG report.

30.     Instead, without any prior notice, at 2:00 p.m. on June 29, 2018, CBE hand delivered a letter to Biggs, which stated in relevant part that "you are an at-will employee working at the pleasure of the Chief Executive Officer. A determination has been made that a change in leadership is needed at Edmund Burke Elementary School. Accordingly, you are hereby advised that your employment with the Chicago Public Schools is terminated effective **immediately**." (Emphasis in original.)

31.     The letter did not specify the grounds for Biggs' termination and did not mention the OIG report.

6

32.     Further, the letter stated, "You are not eligible for re-employment with the Chicago Public Schools."

33.     Under CBE's policy entitled "Chief Executive Officer's Guidelines for Designating Separated Employees as Ineligible for Rehire" (eff. July 1, 2011) (amended Oct. 1, 2015), employees dismissed for cause are ineligible for rehire under one of three circumstances: if they (1) "were incompetent", (2) "engaged in misconduct" or were (3) "[c]ertified full-time teachers dismissed for cause because they worked without renewing their certification (meaning that they did not complete professional development after several notices or had their certifications suspended or revoked for cause).

34.     Further, the policy states, "When a separated employee receives the DNH designation *because an investigation substantiates that the separated employee committed misconduct*, the Office of Labor Relations or the Talent Office shall notify the separated employee of the designation and reasons for it. Except in cases that present legitimate privacy or safety concerns, a copy of any applicable investigatory report issued by an investigator employed by the district shall be included in the notice with appropriate redactions in the case of student information or other privacy concerns."

35.     Biggs received a copy of the OIG report for the first time on June 29, 2018, via email at 3:49 p.m., after she received CBE's letter terminating her employment.

36.     Consequently, by designating Biggs as ineligible for rehire and providing her with a copy of the OIG report after her termination, CBE affirmed that Biggs was dismissed for cause due to misconduct.

37.     Designation as ineligible for rehire is commonly known as the "Do Not Hire" list (DNH).

38.     Chicago Public Schools is, according to CBE, "the third largest school district in the United States of America" and "serves more than 400,000 students in over 600 schools."

39.     Moreover, charter and contract schools that are not directly under the control of CBE have, since 2017, used CBE's background check system, including the DNH list, to vet potential employees and make hiring decisions.

40.     By designating Biggs DNH, Biggs is prohibited from working in any school or educational institution in the Chicagoland area.

41.     Also on June 29, 2018, Felicia Sanders, the Chief of Schools for Network 9, sent a letter to all Burke teachers and staff, as well as the Local School Council, school partners, and community members, informing them that "Jessica Biggs has been removed as interim principal of Edmond Burke Elementary School effective June 29, 2018. Ms. Biggs was removed in response to an investigation by the Office of the Inspector General that identified improper attendance practices at Burke."

42. In that same letter, Sanders invited the teachers and staff to a meeting to be held at 5:30 p.m. on Monday, July 9, 2018, "to discuss the school leadership change and transition plans."

43. On July 6, 2018, Biggs wrote a letter to CBE requesting reconsideration of her termination and highlighting deficiencies in the OIG report and its conclusions.

44. On July 9, 2018, over 100 teachers, parents, students, and prominent community members gathered in the Burke auditorium in response to Sanders' June 29 invitation.

45. During the meeting, CBE officials represented to the attendees that Biggs was terminated because the OIG found that she falsified attendance records.

46. According to the OIG, while there have been several prior cases in which principals allegedly falsified attendance data, only in one other case has CBE ever fired the employee.

47. During the meeting, CPS Chief of Staff Liz Kirby stated in reference to Biggs' termination, "It is about integrity", and "This is about ensuring that anyone in the system is really following policies and procedures that the board has laid out in order to make sure our schools function in a way that is safe and healthy."

48. Multiple times during the meeting, Kirby referred to "the pillar of integrity" in relation to the termination of Biggs.

49. The meeting, along with Kirby's comments and news of Biggs' termination for allegedly falsifying attendance records, was reported in the media.

9

50.     During the meeting, attendees were upset that the Local School Council (LSC), which is an elected group of parents and community members that helps run a school, was not notified of the OIG investigation or Biggs' termination until after the fact.

51.     Additionally, attendees were upset when Kirby stated that the LSC could not have any role in choosing the next principal.

52.     Attendees demanded that CBE reconsider its decision and provide more information.

53.     In response, Kirby promised to provide further information at a later meeting.

54.     On July 13, 2018, Biggs received a letter from CBE General Counsel Joseph T. Moriarty in response to her July 6 letter.

55.     Moriarty informed Biggs that CBE would not reconsider her termination.

56.     In the letter, Moriarty echoed Kirby's statements at the July 9 public meeting and asserted that Biggs was terminated because she was dishonest and lacked integrity:

> "CPS has made a commitment to its stakeholders that CPS administrators would act with integrity by acting honestly and with transparency in how it conducts business and how it represents itself to stakeholders. Integrity is one of three pillars of the CPS mission. Furthermore, network and central administrators must rely on school principals' honest representation of school performance in order to help students succeed and to have confidence in the principal's work. The manipulation of attendance data and the violation of a basic student safety policy is fundamentally at odds with that commitment and does irreparable harm to the employment relationship."

10

57.     On July 25, 2018, at 6:00 p.m., teachers, parents, students, and prominent community members again gathered at Burke regarding Biggs' termination.

58.     At that public meeting, Sanders and other CBE officials spoke about and presented and discussed the OIG report and its findings to the attendees and passed out the Executive Memo portion of the OIG's report, which summarized the OIG's findings, including the OIG's assertion that Biggs had falsified attendance data, and identified Biggs by name.

59.     Prior to her termination on June 29, 2018, Biggs was never given the opportunity by CBE to respond to the OIG's findings and clear her name.

60.     Prior to her termination on June 29, 2018, Biggs was not given a pre-termination hearing by CBE at which she could clear her name.

61.     At no point since her termination on June 29, 2018, has CBE afforded Biggs a post-termination hearing at which she could clear her name.

### Count I
### 42 U.S.C. § 1983 – Due Process

62.     The Fourteenth Amendment to the U.S. Constitution prohibits deprivations of an individual's life, liberty, or property without due process of law.

63.     The Fourteenth Amendment is enforceable under 42 U.S.C. § 1983.

64.     By terminating Biggs without affording her either a pre-termination or post-termination hearing, CBE deprived Biggs of her liberty without due process.

65.     By asserting that Biggs was terminated because of dishonesty and lack of integrity, CBE impugned her moral character.

66.     CBE's allegation that Biggs' falsified attendance records and its decision to designate Biggs DNH stigmatizes Biggs by permanently identifying her as an employee who was fired for cause due to misconduct.

67.     CBE publicly disclosed this stigmatizing information by asserting at two public meetings, which were reported by the media, that Biggs was fired for falsifying attendance records and a lack of integrity.

68.     CBE also publicly disclosed this stigmatizing information by distributing copies of the OIG's findings to members of the public at the July 25, 2018 public meeting.

69.     By designating Biggs DNH and publicly disclosing that she was terminated for falsifying attendance records and a lack of integrity, Biggs is not only unable to obtain employment anywhere in CPS or its charters or contract schools but is also functionally blacklisted in the educational profession and will be unable to obtain any employment anywhere in the educational field or pass an educational employment background check.

70.     In fact, since her termination, Biggs received an offer of employment as an assistant principal that was subsequently withdrawn due to her placement on the Do Not Hire list.

71.     Biggs' DNH designation can be easily identified by all future employers who contact CBE for a reference check during an employment screening.

72.     In fact, during Biggs' job search after her termination, she has been forced to disclose on multiple occasions to prospective employers during the application process the fact that she was terminated by CBE.

73.     Additionally, other prospective employers indicated during the application process that they had become independently aware of Biggs' termination by CBE.

74.     Moreover, CBE's public dissemination of the OIG report and statements that Biggs was fired for falsifying school records and a lack of integrity is easily accessible to any potential employer with a simple Internet search.

75.     The termination of Biggs without notice or hearing was in violation of the Due Process Clause of the Fourteenth Amendment is a policy of CBE because it was a decision of the Chief Executive Officer, who is a final decision- or policy-maker for CBE with respect to termination of interim principals.

76.     Because of CBE's unconstitutional policy, Biggs has suffered damages.

WHEREFORE, Plaintiff Jessica Biggs respectfully requests that the Court enter judgment in her favor and against Defendant Chicago Board of Education and award her the following relief:

- Declaratory and injunctive relief, including but not limited to reinstatement;

- Compensatory damages, including but not limited to lost wages and earning capacity and mental and emotional pain and suffering;

- Attorney fees and costs;

13

- Any other relief the Court deems just.

Respectfully Submitted,

JESSICA BIGGS

*s/James G. Vanzant*
Attorney for Plaintiff

James G. Vanzant, Esq. (ARDC 6304196)
BLAINE & VANZANT, LLP
922 Davis Street
Evanston, Illinois 60201
Tel.: (312) 788-7584
Email: jgv@blainevanzant.com

14