IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jessica Biggs, | ) | |
|     Plaintiff, | ) | Case No. 1:18-cv-06183 |
| | ) | |
|     v. | ) | The Honorable Mary M. Rowland |
| | ) | |
| Chicago Board of Education, | ) | |
|     Defendant. | | |

# EXHIBIT B IN SUPPORT OF BOARD'S MOTION FOR COSTS

1

```
                     IN THE UNITED STATES DISTRICT COURT
 1                  FOR THE NORTHERN DISTRICT OF ILLINOIS
                               EASTERN DIVISION
 2

 3    JESSICA BIGGS,                   )  Docket No. 18 C 6183
                                       )
 4                 Plaintiff,          )  Chicago, Illinois
                                       )  December 2, 2020
 5          v.                         )  9:32 a.m.
                                       )
 6    CHICAGO BOARD OF EDUCATION,      )
                                       )
 7                 Defendant.          )

 8
              TRANSCRIPT OF PROCEEDINGS - Telephonic Status
 9                BEFORE THE HONORABLE MARY M. ROWLAND

10
      APPEARANCES:
11

12    For the Plaintiff:     MR. JAMES G. VANZANT
                             Blaine & Vanzant LLP
13                           922 Davis Street
                             Evanston, IL 60201
14

15    For the Defendant:     MS. ELIZABETH K. BARTON
                             MS. ANGELA R. HUISINGH
16                           Chicago Board of Education
                             Department of Law
17                           One N. Dearborn Street
                             Suite 900
18                           Chicago, IL 60602

19
      Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
20                           Official Court Reporter
                             219 S. Dearborn Street, Room 1224
21                           Chicago, IL 60604
                             312.435.6053
22                           laura_renke@ilnd.uscourts.gov

23

24

25
```

1          (In open court via telephone.)
2               THE CLERK:  18 C 6183, Biggs v. Chicago Board of
3     Education.
4               THE COURT:  Good morning.  Let's have counsel put
5     their appearances on the record.  We'll start with plaintiff.
6               MR. VANZANT:  Good morning, your Honor.  James Vanzant
7     for Ms. Biggs.
8               THE COURT:  Good morning.
9               Counsel for the board.
10              MS. BARTON:  Good morning, your Honor.  This is
11    Elizabeth Barton on behalf of the board.  And I also have
12    Angela Huisingh on the line as well.
13              MS. HUISINGH:  Good morning, your Honor.
14              THE COURT:  Good morning.
15              Okay.  Last we talked, the board had recently located
16    some documents, I think some tardy reports or tardy sheets.
17    You were working out how to produce those.  And that was the
18    end of discovery.  So can I get a report maybe from the board
19    about that?
20              MS. BARTON:  Sure.  I'd be happy to, your Honor.
21    Thank you.
22              So we've been working with our IT services team and
23    our internal folks who maintain the student attendance records
24    just to see what's possible.  So we -- my understanding is that
25    the plaintiff -- I'm getting some feedback here.  Sorry.

1       My understanding is that the plaintiff had requested
2  to review, you know, the hard copies of the tardy books, which
3  are really just carbon copy slips of when students arrived to
4  school.  And there's, you know, a carbon copy of when the
5  student arrived to the school.  And they wanted to compare that
6  to our online database of the CPS software that maintains
7  student attendance.
8       So there's a couple different roadblocks, but we do
9  have a solution.
10      So some of the roadblocks that we've run into is that
11 the system for student data, or student attendance data, is
12 actually archived because CPS has switched attendance software
13 since the time that's relevant to this case.  And there's only
14 a really small group of individuals at CPS who would have
15 access to that, and they can't grant a third party access to
16 it.  So it would require us to have one of those team members
17 really sit in a room with the plaintiff's counsel and whoever
18 they want to bring in, you know, and they've estimated for at
19 least five working days, which, in our opinion, is burdensome.
20 We also, obviously, have concerns around COVID and being in the
21 same room.
22      And then the biggest hurdle that we're facing is the
23 two statutes, ISSRA and FERPA, which protect student records
24 and student identifying information.  And so, you know, the
25 district's view of those statutes is that granting a third

1 party access to student identifying information would require
2 us to notify each student's parent or guardian of the
3 disclosure. And if we're dealing with hundreds of students per
4 year, that is also burdensome just to even make those
5 notifications.
6 So based on all of those, we've come up with a
7 conditional proposal for the other side, which I believe
8 they're still considering. And so the proposal, your Honor, is
9 that we would allow attorneys from both sides to be together
10 and review the tardy books from 2016-'17 school year, 2017-'18
11 school year, and we can count the number of students who
12 arrived that would be marked -- that should be marked tardy
13 correctly or who should have been marked half day absent.
14 And we're really calculating and focusing on the total
15 numbers, and so hopefully we get to a point where the parties
16 can stipulate to those numbers since we're viewing the books at
17 the same time. And those numbers, those total numbers, can be
18 compared to the numbers that the Office of Inspector General
19 relied on in making its conclusion.
20 So this really gets everyone to the same goal: you
21 know, how many tardy codes were used correctly based on a
22 student's arrival time. So regardless of -- you know, so that
23 kind of gets us past the issue of student -- of releasing
24 student identifying information if we're looking at the total
25 numbers as opposed to specific students, if that makes sense.

Case: 1:18-cv-06061 Document #: 282 Filed: 01/29/21 Page 5 of 8 PageID #:2491
Case: 1:18-cv-06833 Document #: 282 Filed: 01/29/21 Page 56 of 78 PageID #:2691

5

1     THE COURT: Uh-huh. So --
2     MS. BARTON: So that was our proposal to see if we
3 could get there.
4     THE COURT: Okay. That sounds like progress.
5     Mr. Vanzant, where are you at? Are you considering
6 that proposal, or where are you at?
7     MR. VANZANT: Yes, your Honor. We did review that
8 with our client last night. And we think that this should get
9 us there. There's obviously some practical issues that we have
10 to hash out, but I think that this conditional proposal will
11 get us to where we want to get.
12     THE COURT: Okay. What's your timeline, do you think,
13 for getting this wrapped up? I mean, is this something you can
14 get done this year?
15     MR. VANZANT: I think that's largely going to depend
16 on the defense availability, your Honor.
17     MS. BARTON: So, your Honor, we can certainly, you
18 know, try for that. We do -- you know, all of our CPS central
19 offices are all closed. We've been working from home since
20 March.
21     THE COURT: Right.
22     MS. BARTON: And then the schools, obviously, have
23 limited availability for us to go in. And they're even
24 stricter right now.
25     But schools are, you know, planning to go into

1    in-person learning in January.  So, you know, we can certainly
2    try to find a space and get approval to do that.  That's why
3    we're calling it a conditional proposal, because we still have
4    to get approval to, you know, be in a CPS space.  Perhaps we
5    can work it out with the plaintiff's counsel.  We can meet in a
6    neutral space.  But that's -- you know, we can certainly work
7    out those practical issues.
8             THE COURT:  So what would you --
9             MS. BARTON:  I would propose that we --
10            THE COURT:  Yeah.  What would you suggest?
11            MS. BARTON:  I was going to --
12            THE COURT:  Do you want to come back at the end of
13   January?
14            MS. BARTON:  Yeah, if your Honor wouldn't mind.  If we
15   could come back at the end of January, and hopefully we've been
16   able to complete this review process and we can report to your
17   Honor then.
18            THE COURT:  Okay.  Why don't we say February 2nd,
19   status at 9:30.  And hopefully, you know, you'll either be done
20   with it or you'll be able to say, look.  We have it set up for,
21   you know, February -- whatever date in February or something
22   like that.  Okay?
23            MS. BARTON:  Yes.  Thank you so much.
24            THE COURT:  Okay.  Great.  No, thanks for working it
25   out.  I hope that works.

1      MS. BARTON:  Wonderful.  Thank you, your Honor.

2      THE COURT:  All right.  Have a good day.

3      MS. HUISINGH:  Thank you, your Honor.

4      MR. VANZANT:  Thank you, your Honor.

5      MS. BARTON:  You too.  Thank you.

6   (Concluded at 9:38 a.m.)

7                    C E R T I F I C A T E

8   I certify that the foregoing is a correct transcript of the

9   record of proceedings in the above-entitled matter.

10

11  */s/ LAURA R. RENKE*                              *January 29, 2021*
    LAURA R. RENKE, CSR, RDR, CRR
12  Official Court Reporter